AT the January term, 1802, of the Logan county court, there was granted to Robert Bryan a certificate for two hundred acres of land, containing therein a location describing the land as lying in Logan county, on Red river, beginning at a hickory in the barrens; thence running westward, southward, eastward and northward, so as to include the complement arid improvement according to law. A survey was after-wards, in April 1805, executed upon this certificate, in the name of Bryan; and the certificate of survey af *250 terwards, on the 4th of January 1808, assigned by Bryan to ísaac Reynolds. Prior, however, to the assignment of the certificate of survey, and on the 19th oFMarch 1807, Bryan assigned to Reynolds the certificate obtained from the county court of Log at],.
On the 22d of October 1807, Reynolds, for a valuable consideration, sold the land described in the sur. vey made under the certificate, to William Kirkland* and gave to Kirkland an obligation for a general warranty deed, to be made so soon as the patent couldbe obtained from the commonwealth, Kirkland paying the state price.
After this, Kirkland sold the land to two of the Campbells ; but, the price being unpaid, he consented that John Campbell, one of those to whom he had sold, and who is alleged to have become the proprietor of the interest of the other, might sellthe land, and that, upon receiving the consideration for which he had sold to the Campbells, he would assign Reynolds’ obliga, tion. Campbell accordingly contracted with Samuel Caldwell and George M’Whorter for the sale of the land, at the price of eight hundred dollars; about three hundred and seven dollars thereof Caldwell and M’Whorter were to pay Kirkland, being the amount of the consideration due Kirkland for the land, from the Campbells ; and the balance to be paid, and was in fact paid Campbell. This contract between Campbell, Caldwell and M’Whorter seems to have been made early in the spring 1811. and on the 25th of March in that year, Caldwell and M’Wb'orter executed two notes for the payment of the consideration due Kirkland, one of which was for one hundred and seven dollars, and the other for two hundred dollars; and Kirkland, on the same day, executed, under his hand and seal, an instrument of writing, though inar. tificially expressed, in substance nothing more than an obligation binding him to assign to Caldwell and M’Whorter, the obligation of Reynolds for a title to ■the land, whenever the three hundred and seven dollars, which they had undertaken to pay. should be discharged. The note for one hundred and seven dollars was afterwards discharged, in a horse paid by Caldwell to Kirkland ; bat the other note still remains unpaid ; and, owing to the insolvency of both Caldwell and M’Whorter, Kirkland has been unable to coercb *251 payment thereof by the most vigilantprosecution of a suit against them on the note.
Subsequent to this, Caldwell purchased from M3Whorter his interest in the land; and after Caldwell had become insolvent and taken the oath administered to that class of debtors, lie, on the 10th of March 1814, assigned to Frazier, for a valuable consideration, the obligation which had been given by Kirkland to him and M3 Whorter.
Kirkland, after having prosecuted his suit on the* two hundred dollar note, finding that he was unable to coerce payment from Caldwell and M’Whortcr, determined to sell the land for which he held Reynolds’ obligation; and, on the ltth of May 1814, actually sold and assigned the obligation of Reynolds to Henry F. Broadnax, for the sum of two hundred and forty-eight dollars, at the same time making known to Broadnax the circumstances in relation to the obligation which he had previously given to Caldwell and M3 Whorter. At the time of making the purchase from Kirkland, Broadnax appears, however, to have held two other claims to part of the land, under pa. tents which had previously issued from the commonwealth ; and he alleges that he was induced to make the purchase from Kirkland, to avoid litigation, although he insists that the claims which he then held are of paramount validity to that purchased of Kirlcland. Subsequent to this, Broadnax proceeded to pay thirty, five dollars and seventy.five cents, the amount which remained unpaid of the state price, and obtained a patent in his own name for the land purchased of Kirkland.
2. The foregoing are the prominent facts presented in the record, and upon which the present contest must be decided; and the question presented for the consideration of this court, is, whether or not the circuit court was correct in dismissing the bill of Frazier, asserting claim to the land through the assignment of Kirkland’s obligation to Caldwell and M3Whorter, and offering to pay the amount of the principal, interest and costs of the judgment recovered by Kirkland against Caldwell and M’Whorter, and the amount paid by Broadnax to the state on obtaining the patent, and praying that Broadnax maybe compelled *252 to convey the land by a deed with general warranty# and for general relief.
The assignee of a contract, demanding in chancery the specific execution of it, will stand in no better situation than his assignor would
If befor the assignment, the assignor had by an ilisal'tocompiy with his pait, f rtm to'demancí'a specificexe.cution, that forfeiture will bar the assignee, notwithstanding hi. ,oay with promptitude a--d good faith, off.-r to do, nunc pro tunc, «'hat his ass'gnor ought to have done.
*252 In the consideration of this case, it must be conceded, that Broadnax, in consequence of his purchase from Kirkland, cannot assume a more favorable attitude than Kirkland would, were the legal title in him, and the suit had been brought by Fraziey to compel him to surrender it; for. having purchased .from Kirkland, with a knowledge of the obligation which ^Kirkland had previously given to . aldwell and M’’’Whorte.r, Broadnax must be considered as bolding the title subject to any equity which that obligation may have imposed on Kirkland, It is also, equally clear, that Frazier cannot have acquired any additional equity to that which Caldwell and McWhorter derived from the obligation of Kirkland, by bis subsequent purchase of Kirkland’s obligation By that purchase¡¡ Frazier has become the assignee of Kirkland’s obligation to Caldw.el! and M’Whorter ; but he was not induced by anj act of Kirkland to make the purchase; and holding the obligation merely in the character of an assignee, in seeking a specific execution of that obligation, his claim must be subject to any defence which might have been urged against it in the hands of Caldwell and M’Whorter.
.3. Throwing out of view, therefore, any peculiar Merit which either Broadnax or Frazier can have derived under their respective purchases, the present contest must mainly turn on the question, whether or not* under the circumstances displayed in evidence, Caldwell and M’Whorter, before the sale to Frazier, would have been entitled tq the aid of a court of equify, p, enforce, specifically, the execution of the stipucontained in the obligation given to them by Kirkland. And if any thing like promptness and S(K,f! is required in the fulfilment of stipulations entered into by a complainant seeking the aid of a court of equity, we apprehend they would not; for they have not only failed to discharge the amount which they undertook to pay Kirkland, upon his executing, the obligation to them, but they have evinced a most inflexible and stubborn backwardness in payment, by ')a®lnS the energies of the process of law sued out by Kirkland for the purpose of enforcing payment, They have, it is true, paid Campbell the balance of *253 the purchase money aboye that which was to be paid Kirkland, and have paid Kirkland one hundred and seven dollars, part of three hundred dollars which was stipulated to be paid him ; but, as the amount paid Campbell formed no part of the consideration for which the land was sold by Kirkland, that payment can have produced no obligation on Kirkland to convey ; and the amount paid Kirkland not being more than a little above one third of the consideration for which he sold the land, should not,-after such a back, wardnegs in paying the residue, induce the court to en force a specific execution of the contract. It is not enough, that a complainant, has performed part of,the stipulations on his part, to entitle him to the assistance of a court of equity. Justice demands an entire ful filmentof the contract; and that rule which requires of complainants the exercise of good faith in perform ing their undertakings, forbids the aid of the court in their favor, where, as in this case, after there has been a partial performance of their stipulations, they have evinced a marked design not to perform the residue. In fact, there are ocher circumstances displayed in this cause, which mark the peculiar propriety of leav ing the complainant to his remedy at law. At the time Kirkland gave his obligation to Caldwell and M’Whorter, there appears to have been an adverse claim conflicting with that owned by Kirkland, and neither of the claims was then patented $ and, from any thing apparent in the record, neither could succeed against the elder patent of the other. It was important, therefore, to the validity of Kirkland’s claim, that a patent should be obtained with all practicable dispatch. By the terms of Reynolds’ obligation, the state price was' to be paid by Kirkland; and after Caldwell and M’Whorter made their purchase, the duty devolved on them, of making that payment. A delay of that payment was, therefore, imminently calculated, not only to place in hazard the claim sold by Kirkland ; but as Caldwell and M’Whorter had both become insolvent, the prospect of Kirkland’s obtaining indemnity out of the land for the consideration unpaid, was thereby greatly diminished. After being involved in such a dilemma, by the backwardness and delay of Caldwell and M’Whorter, the onh safe alternative which could have been pursued by Kirkland^ *254 was that adopted by him, to sell the land to Broad, nax, the proprietor of the other claim ; and having done so, Frazier, claiming under those who by their delay had produced that necessity, ought not to receive the assistance of a court of conscience; and con. sequently, his bill was properly dismissed by the cir. puit court.
■V specific execution, denied «n the a.'c; unt of the default of toe parties from whom the complainant derived his right.
*254 The decree must, therefore, he affirmed with costs.-